# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CHRIS HARRISON,

        Plaintiff,

v.

OSAWATOMIE STATE HOSPITAL,
et al.,

        Defendants.

Case No. 20-2565-DDC-GEB

## MEMORANDUM AND ORDER

Plaintiff Chris Harrison worked at Osawatomie State Hospital (OSH) for less than a year. Things didn't go well. Shortly after he was hired, plaintiff sought accommodation for a claimed disability. A few months later, he reported alleged sexual harassment of one of his coworkers. A short time after that, OSH reprimanded him for alleged work deficiencies. OSH then terminated his employment, all this occurring within seven months of plaintiff's start date.

Now, plaintiff brings suit against OSH, a Kansas state hospital, and OSH's agency, the Kansas Department for Aging and Disability Services (KDADS). He claims disability discrimination, retaliation, and breach of contract. Also, he makes claims against four individuals—all OSH employees. He claims they violated his constitutional rights.

Before the court is defendants' Motion to Dismiss (Doc. 28). For reasons explained below, the court grants the motion in part and denies it in part.

## I.   Facts[1]

Plaintiff began working as a safety and security officer at OSH on January 1, 2019.  Doc. 12 at 4 (Am. Compl. ¶ 18).  When he began work, plaintiff notified OSH that he has a disability: juvenile myoclonic epilepsy (JME).  *Id.* at 3, 4 (Am. Compl. ¶¶ 15, 19).  Plaintiff asked OSH to accommodate his disability by allowing him to go home and take his medication when working a double shift.  *Id.* at 4 (Am. Compl. ¶ 19).  Plaintiff alleges that OSH never accommodated this request.  *Id.* (Am. Compl. ¶ 20).

In March 2019, some of plaintiff's male coworkers sexually harassed a female coworker. *Id.* (Am. Compl. ¶¶ 21–24).  Plaintiff reported the sexual harassment to his supervisor, Lt. Blake Thomas.  *Id.* (Am. Compl. ¶ 25).  Plaintiff and Thomas also reported the harassment to Mike Wood, OHS's Chief of Security.  *Id.* (Am. Compl. ¶ 26).

Plaintiff sued four individual defendants:  Ven Rao, Mike Lemon, Wes Cole, and Dean Demoss.  In May 2019, defendants Rao and Lemon brought plaintiff into the human resources office and questioned him about "driving excessively slow to an emergency situation."  *Id.* (Am. Compl. ¶ 27).  Rao and Lemon claimed they had a video of the incident provided by plaintiff's female coworker—the coworker who plaintiff's coworkers had sexually harassed.  *Id.* at 4–5 (Am. Compl. ¶ 28).  But, Rao and Lemon told the female coworker they had a video of the incident recorded by her husband, another OSH employee.  *Id.* at 5 (Am. Compl. ¶ 29).  Rao and Lemon questioned plaintiff and the female coworker "excessively" about these accusations and threatened their jobs.  *Id.* (Am. Compl. ¶ 30).

---

[1]     The following facts come from plaintiff's Amended Complaint (Doc. 12).  The court accepts these facts as true and views them in the light most favorable to plaintiff.  *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) ("We accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff]." (citation and internal quotation marks omitted)).  The court recounts only the facts pertinent to the current motion.

On May 17, 2019, plaintiff attended fire training. *Id.* (Am. Compl. ¶ 32). Plaintiff mistakenly thought he wasn't scheduled to work the next day. *Id.* (Am. Compl. ¶ 33). On May 18, defendant Lemon contacted plaintiff, and he explained his mistake. Lemon replied, "Ok take it easy and we'll see you on Monday." *Id.* (Am. Compl. ¶ 35). Thomas also contacted plaintiff and expressed his disapproval. *Id.* at 5–6 (Am. Compl. ¶¶ 36–40). Plaintiff received a reprimand for his absence, but human resources later rescinded the reprimand. *Id.* at 6 (Am. Compl. ¶¶ 41–44).

On May 21, 2019, plaintiff attended a fire training led by defendant Demoss. *Id.* (Am. Compl. ¶ 45). During the training, plaintiff partnered with defendant Lemon, but "Lemon removed his mask." *Id.* (Am. Compl. ¶ 46). Demoss told plaintiff to end the exercise, over plaintiff's protests. *Id.* at 6–7 (Am. Compl. ¶¶ 46–48). Demoss issued plaintiff a failing score for the fire training. *Id.* at 7 (Am. Compl. ¶ 49).

On May 28, 2019, plaintiff asked Thomas about a pending request for paid time off that plaintiff had submitted in early May to attend a crisis intervention training. *Id.* (Am. Compl. ¶ 50). Thomas hadn't approved plaintiff's paid time off request and "continued to refuse to approve his requested leave[.]" *Id.* (Am. Compl. ¶ 51). Eventually, plaintiff's request was approved, but "he was forced to pay back [time] in excess of $200" despite his belief that he had enough paid time off available for the training. *Id.* at 8 (Am. Compl. ¶¶ 57–59).

The same day of plaintiff's conversation with Thomas about his request for time off— May 28—plaintiff discovered he had failed the earlier fire training with defendant Demoss. *Id.* at 7 (Am. Compl. ¶¶ 52–54). Plaintiff discussed this training with Thomas and explained the failure wasn't his fault. But Thomas deferred to defendant Demoss's evaluation. *Id.* at 7–8 (Am. Compl. ¶¶ 55–56). Plaintiff also asked defendant Rao why he'd failed the fire training and asked

about other coworkers who were excluded from the fire department. *Id.* at 8 (Am. Compl. ¶¶ 60–61). Rao later confirmed that other coworkers were "excluded from the fire department and/or evaluated based on the fire evaluations." *Id.* (Am. Compl. ¶ 62). And Rao told plaintiff to focus on his work, and not to worry about his fire training evaluation score. *Id.* at 9 (Am. Compl. ¶ 65). Plaintiff attended another fire training on June 3, 2019 and passed. *Id.* (Am. Compl. ¶¶ 66, 68). Plaintiff reported to human resources "how drastically different this training was from prior trainings" and "expressed that he felt he was being targeted and retaliated against." *Id.* (Am. Compl. ¶ 66). Plaintiff also reported to human resources that his non-disabled coworkers had failed the fire training or should have failed it, and plaintiff's other disabled coworkers were accommodated. *Id.* (Am. Compl. ¶¶ 67–68).

On June 5, 2019, defendant Rao told plaintiff that defendant Cole believed plaintiff was constantly making claims and allegations. *Id.* (Am. Compl. ¶ 69). Rao said plaintiff was harassing the hospital. *Id.* (Am. Compl. ¶ 69).

On June 15, 2019, plaintiff again requested paid time off to attend active shooter training. *Id.* at 10 (Am. Compl. ¶¶ 70–72). Thomas denied his request without explanation. *Id.* (Am. Compl. ¶¶ 70–72). On June 25, plaintiff contacted defendant Cole and requested unpaid time off to attend the training. *Id.* (Am. Compl. ¶ 75). But Cole denied his request, explaining that the training was not part of plaintiff's job. *Id.* (Am. Compl. ¶ 76). But, plaintiff alleges, a coworker "was permitted to take unpaid leave when she requested time off to go on vacation." *Id.* (Am. Compl. ¶ 77).

In late June or early July of 2019, plaintiff contacted KDADS about OSH's failure to accommodate his disability and OSH's "continued discrimination and harassment against him, based on his disability." *Id.* (Am. Compl. ¶ 78). Plaintiff alleges KDADS did nothing to ensure

OSH accommodate his disability. *Id.* (Am. Compl. ¶ 79).  Several times, plaintiff asked Rao for reassignment "as a reasonable accommodation." *Id.* at 11 (Am. Compl. ¶ 80).  But Rao never responded. *Id.* (Am. Compl. ¶ 80).  On July 2, 2019, plaintiff notified Rao "that he was excluded from applying for a position." *Id.* (Am. Compl. ¶ 81).

On July 15, 2019, plaintiff, having just completed an active shooter training, informed Rao that he felt OSH's workplace violence evacuation procedures were sufficient. *Id.* at 11–12 (Am. Compl. ¶ 88).  Later, on July 15, Rao informed plaintiff that defendant Cole had placed him on administrative leave. *Id.* at 12 (Am. Compl. ¶ 89).  Rao told plaintiff the decision was "neutral," but plaintiff told Rao he disagreed. *Id.* (Am. Compl. ¶¶ 90–91).  OSH placed plaintiff on administrative leave to complete an investigation that OSH had begun in May 2019. *Id.* (Am. Compl. ¶ 92).  OSH terminated plaintiff's employment without cause on July 16, 2019. *Id.* (Am. Compl. ¶ 93).

## II.    Legal Standard

Defendants' arguments for dismissal invoke Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction) and Fed. R. Civ. P. 12(b)(6) (failing to state a claim upon which relief can be granted).

Rule 12(b)(1) permits a defendant to move the court to dismiss for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).  Federal district courts have original jurisdiction over all civil actions arising under the constitution, laws, or treaties of the United States or where there is diversity of citizenship.  28 U.S.C. §§ 1331–32.  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that

jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). The party invoking federal jurisdiction bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018).

Rule 12(b)(6) authorizes a party to move to dismiss an action for failing "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that the complaint's factual allegations are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* (quoting *Twombly*, 550 U.S. at 555). And, while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III.   Analysis

### A.   Whether Defendants KDADS and OSH are Entitled to Sovereign Immunity Against Plaintiff's Disability Claims

Plaintiff's first claim (Count I) accuses defendants KDADS and OSH of failing to accommodate his disability, violating Title I of the Americans with Disabilities Act Amendments Act (ADAAA), specifically 42 U.S.C. § 12112(a). Doc. 12 at 12–15 (Am. Compl. ¶¶ 97–111).

Title I of this Act prohibits employers, including state employers, from discriminating in employment-related matters against a qualified individual based on disability.  42 U.S.C. § 12112(a).  Plaintiff also claims defendants retaliated against him for requesting an accommodation for his disability, violating the ADAAA (Count II).

Defendants KDADS and OSH move to dismiss plaintiff's ADAAA claims of disability discrimination and retaliation because they assert that the Eleventh Amendment provides them with immunity to suit in federal court, so, defendants argue, the court lacks jurisdiction over these claims.  The Eleventh Amendment provides:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State[.]"  U.S. Const. amend. XI.  "Although by its terms the Amendment applies only to suits against a State by citizens of another State, [the Supreme Court's] cases have extended the Amendment's applicability to suits by citizens against their own States."  *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).  "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."  *Id.*

In *Garrett*, the Supreme Court held that states enjoy Eleventh Amendment immunity from suits brought under Title I of the ADAAA.  *Id.* at 364.  This clear directive from the Supreme Court would seem both to begin and end the court's inquiry here.  It's simple.  *Garrett* plainly holds that the states enjoy immunity from suits asserted by citizens in federal court.  Plaintiff has sued OSH, a state hospital, and KDADS, a state agency, under Title I of the ADAAA.  He filed this suit in federal court.

Plaintiff, trying to avert the outcome, invites the court to venture down a rabbit hole he finds in the privileges and immunities clause.  According to plaintiff, Congress created a "federal

right" through its Article I, Section 8 powers when it enacted the ADAAA.  Plaintiff argues this federal right is a privilege or immunity protected by the Privileges and Immunities Clause of the Fourteenth Amendment.  It provides:  "No State shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States[.]"  U.S. Const. amend. XIV § 1.  The Fourteenth Amendment grants Congress the "power, to enforce, by appropriate legislation, the provisions of [the Fourteenth Amendment]."  U.S. Const. amend. XIV. § 5.  So, plaintiff argues, Congress validly abrogated the states' immunity from ADAAA lawsuits with its authority under § 5 of the Fourteenth Amendment because the ADAAA created a federal "privilege[] or immunit[y]" within the meaning of § 1 of the Fourteenth Amendment.

This argument is unconvincing.  Perhaps plaintiff can persuade the Supreme Court to revisit *Garrett* and limit its holding since, as he argues, his case differs from *Garrett.  See* Doc. 37 at 14 (arguing that *Garrett* "holds that Section 5 of the Fourteenth Amendment does not permit Congress to enforce the Amendment's Due Process and Equal Protection provisions by abrogating Eleventh Amendment immunity").  And, according to plaintiff, the Supreme "Court has never held the ADAAA's enforcement mechanism to be unconstitutional through the lens of Privileges and Immunities."  *Id.* at 15.  But, for now, plaintiff's argument identifies the very reason the court must reject his argument:  no court ever has agreed with plaintiff's argument.  To the contrary, the Supreme Court's directives require the court to conclude defendants are immune from suit under Title I of the ADAAA.

In short, the court concludes that *Garrett* isn't different for this case.  Instead, it's directly on point.  The Court considered "whether an individual may sue a State for money damages in federal court under the ADAAA."  531 U.S. at 363.  The Court held the Eleventh Amendment barred such suits in federal court.  And plaintiff here is trying to sue the state for money damages

in federal court under the ADAAA.  The court declines plaintiff's invitation to abridge *Garrett*'s

holding, so it dismisses plaintiff's ADAAA claims of disability discrimination and retaliation.

The court lacks jurisdiction over those claims.

## B.    Whether Plaintiff Sufficiently Has Alleged a Plausible Claim of Title VII Retaliation

Plaintiff also asserts a Title VII claim of retaliation against defendants KDADS and OSH

(Count II).[2]  Plaintiff alleges he engaged in protected activity by opposing sexual harassment by

his coworkers and defendants KDADS and OSH retaliated against him for this opposition.  Doc.

12 at 16 (Compl. ¶ 114).  Title VII prohibits employers from retaliating against one of their

employees because he has "opposed any practice made an unlawful employment practice by"

Title VII.  42 U.S.C. § 2000e-3(a).  When a plaintiff-employee doesn't allege direct evidence of

retaliation, he may assert a plausible claim of retaliation by alleging that:  (1) he engaged in

protected activity; (2) he suffered an adverse employment action; and (3) a causal connection

exists between his protected activity and the adverse employment action.  *Khalik v. United Air*

*Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (citing *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d

987, 998 (10th Cir. 2011)).

The *McDonnel Douglas* burden-shifting framework is an evidentiary standard, not a

pleading requirement.  And so, to survive a motion to dismiss, a Title VII plaintiff need not

---

[2]      Plaintiff's Count II reads:  "Retaliation."  Doc. 12 at 15.  Specifically, the Amended Complaint alleges defendants KDADS and OSH retaliated against plaintiff for requesting an accommodation for his disability in violation of the ADAAA.  But, as explained above, these defendants are immune from suit under the ADAAA.  So, to the extent Count II asserts a claim of ADAAA retaliation, defendants' Motion to Dismiss is granted.  Instead, the court's analysis in this section focuses solely on plaintiff's claim of Title VII retaliation.  Defendants don't argue that the court lacks subject matter jurisdiction over the Title VII claim based on sovereign immunity.  Nor could they.  The Supreme Court has held that Congress validly abrogated the States' Eleventh Amendment immunity for Title VII claims under the Civil Rights Act of 1964.  *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976); *Crumpacker v. Kan. Dep't of Human Res.*, 338 F.3d 1163, 1169 (10th Cir. 2003).  So, the Eleventh Amendment doesn't confine the court's subject matter jurisdiction over plaintiff's Title VII retaliation claim.

adhere to that framework's requirements to plead a prima facie case. *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510–11 (2002). But, "while Plaintiff is not required to set forth a prima facie case for each element, [he] is required to set forth plausible claims." *Khalik*, 671 F.3d at 1193; *see also Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. The Tenth Circuit has explained that "while 'specific facts are not necessary,' some facts are." *Khalik*, 671 F.3d at 1193 (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (brackets omitted)). The "*Twombly/Iqbal* standard recognizes a plaintiff should have at least some relevant information to make the claims plausible on their face." *Id.*

Defendants' motion here focuses on the third element of plaintiff's retaliation claim: causation. The governing law requires that a "'plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.'" *Davis v. Unified Sch. Dist. 500*, 750 F.3d 1168, 1170 (10th Cir. 2014) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) (brackets omitted)). The court concludes that plaintiff here has provided facts sufficient to allege causation.

Plaintiff alleges that defendants KDADS and OSH retaliated against him "by subjecting him to adverse action[.]" Doc. 12 at 16 (Am. Compl. ¶ 115). Plaintiff pleads the following adverse actions: "failing to consistently accommodate Plaintiff's request to go home and take his medicines when working a double shift, failing to allow Plaintiff to train, reprimanding Plaintiff, giving Plaintiff low marks on training exercises, [and] terminating plaintiff's employment." *Id.* These alleged facts, which the court must accept as true, allege that plaintiff, in March 2019, reported sexual harassment of a female coworker to Thomas and Wood. *Id.* at 4 (Am. Compl. ¶¶ 21–25). Then, in May 2019, defendants Rao and Lemon questioned plaintiff about driving slow

to an emergency, claimed that the female coworker had recorded a video supporting this allegation, and threatened plaintiff's job. *Id.* at 4–5 (Am. Compl. ¶¶ 27–30). Rao and Lemon also questioned the female coworker about plaintiff's alleged slow response to an emergency and threatened her job. *Id.* at 5 (Am. Compl. ¶ 30). But Rao and Lemon told the female coworker a different story—that is, they possessed a video from her husband supporting the allegation. *Id.* (Am. Compl. ¶ 29).

Plaintiff's allegations, if supported by proof, could establish a temporal proximity between his protected conduct in March 2019 and his reprimand in May 2019. *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006) (finding plaintiff established causation when defendant fired plaintiff four to six weeks after she requested FMLA leave); *see also Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) ("[W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation." (citations omitted)). And, the incident involved both plaintiff and the female coworker, the alleged victim of sexual harassment.

In sum, the Amended Complaint's allegations provide "some relevant information" and "make the claims plausible on their face." *Khalik*, 671 F.3d at 1193. Under existing law, the Amended Complaint adequately pleads a Title VII retaliation claim based on plaintiff's opposition to sex discrimination. The court thus denies defendants' Motion to Dismiss plaintiff's Title VII retaliation claim.[3]

---

[3] Again, to the extent plaintiff's Count II asserts an ADAAA retaliation claim, defendants' Motion to Dismiss is granted.

C.     **Whether Plaintiff Alleged a Plausible Breach of Contract Claim Sufficiently**

Plaintiff also brings a third claim, one for breach of contract under Kansas law (Count III).  He alleges that defendants KDADS and OSH breached an implied contract when they terminated his employment without cause.  Doc. 12 at 18–19 (Am. Compl. ¶¶ 118–126). Defendants move to dismiss this claim arguing that plaintiff, under Kansas law, was an at-will employee and his Amended Complaint fails to allege facts capable of supporting a finding of an implied employment contract.  Below, the court first decides whether plaintiff was an at-will employee.  Then, the court decides whether plaintiff adequately has alleged an implied employment contract.

1.     **Whether Plaintiff Was an At-Will Employee**

Under "Kansas law, public employment is presumptively at-will."  *Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1136 (10th Cir. 1994) (citing *Stoldt v. City of Toronto*, 678 P.2d 153, 160 (Kan. 1984)).  As defendants point out, under Kansas law, patient staff at OSH serve in the "unclassified service."  Doc. 28 at 7 n.2 (citing Kan. Stat. Ann. § 76-12a05 ("All employees . . . appointed [by the superintendent of the institution] shall be in the classified service . . . except patient help who shall be in the unclassified service[.]") (emphasis omitted)). Kansas law recognizes that "unclassified employees" are "essentially 'at will' employees who serve at the discretion of their appointing authority[.]"  *Platt v. Kan. State Univ.*, No. 110,179, 337 P.3d 73, 2014 WL 6090403, at *6 (Kan. Ct. App. Nov. 3, 2014) (unpublished table opinion); *see also Befort v. Dep't of Com.*, No. 08-2598-KHV, 2009 WL 10707844, at *2 (D. Kan. Dec. 17, 2009) ("[U]nclassified employees are at-will employees" (citing Kan. Stat. Ann. §§ 75-2925– 75-2975)).

So, while employed at OSH, plaintiff was an at-will employee.  And, as "a general rule, an at-will employee may be fired at any time for any reason."  *Smith v. Kan. Orthopaedic Ctr., P.A.*, 316 P.3d 790, 794 (Kan. Ct. App. 2013).

### 2.    Whether Plaintiff Sufficiently Has Alleged an Implied Contract

Despite his at-will employment status, plaintiff alleges an "implied expectation" that KDADS and OSH could terminate him only for cause.  So, plaintiff argues, when defendants terminated his employment without cause, they breached an implied contract.

While Kansas law generally adheres to the employment-at-will doctrine, it also recognizes exceptions—such as limits imposed by an express or implied contract between an employer and its employee.  *Morriss v. Coleman Co.*, 738 P.2d 841, 847 (Kan. 1987).  Kansas law "recognizes an implied obligation on the employer to not terminate an employee arbitrarily where a policy or program of the employer, either express or implied, restricts the employer's right of termination at will."  *Brown v. United Methodist Homes for the Aged*, 815 P.2d 72, 81 (Kan. 1991).  Implied contracts arise when facts and circumstances show a mutual intent to contract.  *Kastner v. Blue Cross & Blue Shield*, 894 P.2d 909, 915 (Kan. Ct. App. 1995) (quoting *Allegri v. Providence-St. Margaret Health Ctr.*, 684 P.2d 1031, 1035 (Kan. Ct. App. 1984)).  Kansas law directs the court to consider the following six factors when determining whether the parties intended to form an implied contract:  (1) written or oral negotiations, (2) the conduct of the parties from the commencement of the employment relationship, (3) usage of business, (4) the situation and objective of the parties giving rise to the relationship, (5) the nature of employment, and (6) any other circumstances which tend to explain or make clear the intention of the parties when the employment commenced.  *Morriss*, 738 P.2d at 848–49 (citing *Allegri*,

684 P.2d at 1033). Normally, the parties' intent is a question of fact. *Id.* at 848 (citing *Allegri*, 684 P.2d at 1035).

Here, plaintiff's contract claim focuses on the fifth factor: the nature of his employment. Plaintiff alleges that he performed services and, in return for those services, defendants compensated him and provided him with benefits. Doc. 12 at 18 (Am. Compl. ¶¶ 118–20); *see also* Doc. 37 at 20 ("Performing a service in return for money is a classic example of a contract[.]"). He alleges that the "implications of Plaintiff's employment with KDADS and OSH, when taken as a whole, created an implied expectation that Plaintiff would not be discharged by KDADS and OSH, except for just cause." *Id.* (Am. Compl. ¶ 121). And thus, plaintiff argues, his breach of contract claim should survive a motion to dismiss because the existence of an implied contract normally presents a question of fact. Doc. 37 at 19–21.

Plaintiff's Amended Complaint alleges an ordinary at-will employment relationship: the employee provides services in exchange for compensation and benefits from his employer. At-will employees, though their employers provide them with compensation and benefits, "may be fired at any time for any reason." *Smith*, 316 P.3d at 794. Plaintiff conjures the "for cause" limitation out of thin air. His Amended Complaint lacks any factual support[4] for such a

---

[4]    Plaintiff cites several cases that illustrate "that ordinarily the existence of an implied contract is question of fact"—but those cases also illustrate why plaintiff's allegations come up short. Doc. 37 at 19. For instance, the plaintiffs in *Morriss* claimed an implied contract that their employer would not fire them except for good cause based on verbal and nonverbal conduct of their supervisors, their employer's established policies, and a disclaimer in a supervisor's manual. 738 P.2d at 849. The *Brown* plaintiff survived summary judgment on his implied contract claim based on the contents of the employer's personnel policies manual. 815 P.2d at 83–84. Plaintiff here hasn't alleged any facts about verbal conduct, nonverbal conduct, policies, or manuals.

And even when a plaintiff alleges policies, procedures, or handbooks—more than plaintiff has alleged here—they nonetheless may fail to allege a plausible implied contract claim. *See Parrott v. Samsung Elecs. Am., Inc.*, No. 18-2502-DDC-TJJ, 2019 WL 1058196, at *3 (D. Kan. Mar. 6, 2019) (concluding complaint's allegations about defendant's discrimination policies and procedures were insufficient to survive motion to dismiss); *see also Klaassen v. Univ. of Kan. Sch. of Med.*, 84 F. Supp. 3d 1228, 1255 (D. Kan. 2015) (concluding plaintiff hadn't sufficiently pleaded an implied contract where

limitation—no allegations about the other *Morriss* factors.  It simply omits any allegations about written or oral negotiations, the parties' conduct, the usage of business, the situation and objective of the parties, or any other circumstances.  Plaintiff argues the court can't dismiss his breach of contract claim because it's a fact issue, but plaintiff forgets his pleading burden—one requiring him to allege facts that make his claim "plausible." *Twombly*, 550 U.S. at 570.  Given that failure, under Kansas law, plaintiff was an at-will employee, and his breach of contract claim isn't plausible.

In sum, plaintiff here hasn't alleged a single fact that could suffice to "restrict the employer's right of termination at will." *Brown*, 815 P.2d at 81.  The court thus dismisses plaintiff's claim for breach of implied contract because plaintiff hasn't pleaded any facts to support his legal theory.

### D.      Whether Plaintiff Has Sufficiently Alleged a Plausible § 1983 Claim

Plaintiff asserts a fourth cause of action against individual defendants Rao, Lemon, Cole, and Demoss.  It accuses them of violating 42 U.S.C. § 1983 (Count IV).  Doc. 12 at 19–22 (Am. Compl. ¶¶ 127–145).

To "state a § 1983 claim, a plaintiff must 'allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.'" *Bruner v. Baker*, 506 F.3d 1021, 1025–26 (10th Cir. 2007) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).  Defendants don't dispute that they were OSH employees acting under color of state law.  So, the court's analysis focuses

---

complaint relied solely on defendant's employment handbook to show implied contract); *Moreno-Woods v. T-Mobile USA, Inc.*, No. 11-1314-RDR, 2012 WL 887602, at *3 (D. Kan. Mar. 14, 2012) (dismissing plaintiff's breach of implied contract claim because complaint's allegations about interview process and company handbook were too general).

on plaintiff's allegations that defendants violated his First Amendment and Fourteenth Amendment rights.  The court considers the two alternatives, in turn, below.

### 1. Whether Plaintiff Has Alleged a First Amendment Violation Sufficiently

Plaintiff alleges a First Amendment violation, claiming defendants Rao, Lemon, Cole, and Demoss retaliated against him for opposing sexual harassment and requesting a disability accommodation.  Our Circuit recognizes that "'[p]ublic employees do not surrender their First Amendment rights by virtue of their employment with the government.'"  *Bailey v. Indep. Sch. Dist. No. 69*, 896 F.3d 1176, 1180 (10th Cir. 2018) (quoting *Martin v. City of Del City*, 179 F.3d 882, 886 (10th Cir. 1999)).  So, a "'government employer cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression.'"  *Id.* (quoting *Burns v. Bd. of Cnty. Comm'rs*, 330 F.3d 1275, 1285 (10th Cir. 2003)).  But, our Circuit also recognizes that "'the government has important interests in maintaining an efficient workplace and promoting the services that it renders[.]'"  *Id.* at 1180–81 (quoting *Martin*, 179 F.3d at 886).  And so, "'the government has an increased degree of discretion in regulating a public employee's speech.'"  *Id.* at 1181 (quoting *Martin*, 179 F.3d at 886).

The Tenth Circuit's cases direct district courts to balance "the interests of public employees in commenting on matters of public concern and the interests of government employers in performing services efficiently" by using the "five-part *Garcetti/Pickering* test."  *Id.* at 1181; *see also Dixon v. Kirkpatrick*, 553 F.3d 1294, 1301–02 (10th Cir. 2009) (first citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006); then citing *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968)).  The *Garcetti/Pickering* test consists of these five elements:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Dixon*, 553 F.3d at 1302.  "To prevail, a plaintiff must establish all five elements."  *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018).  The Tenth Circuit has instructed that the first three elements present "issues of law to be decided by the court[.]"  *Dixon*, 553 F.3d at 1302.  The "last two are factual issues to be decided by the factfinder."  *Id.*

Defendants argue that plaintiff fails to allege any facts to support the second element of this test—that plaintiff's speech involved a matter of public concern.  "In deciding whether a particular statement involves a matter of public concern, the fundamental inquiry is whether the plaintiff speaks as an employee or as a citizen."  *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996).  The public concern element requires the employee to allege that his speech "involves a matter of public concern and not merely a personal issue internal to the workplace."  *Moore v. City of Wynnewood*, 57 F.3d 924, 931 (10th Cir. 1995) (citing *Connick v. Myers*, 461 U.S. 138, 146–47 (1983)).

In response to the defendants' motion, plaintiff argues that he engaged in two categories of protected speech:  (1) requesting a disability accommodation and (2) reporting sexual harassment of a female coworker.  Doc. 12 at 20 (Am. Compl. ¶ 138).  Defendants argue that neither of these incidents involved a matter of public concern.  Doc. 28 at 9–10.  Plaintiff never responds to this argument.  *See generally* Doc. 37.  He never argues that either incident of protected speech was a matter of public concern.  *See generally* Doc. 12, Doc. 37.  And, as "the Supreme Court has recognized, 'the public may always be interested in how government officers

are performing their duties,' but the First Amendment does not 'transform everyday employment disputes into matters for constitutional litigation.'" *Joritz v. Gray-Little*, 822 F. App'x 731, 741 (10th Cir. 2020) (quoting *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 399 (2011)).

Given plaintiff's failure to support his claim with any legal authority or reasoning, the court holds that plaintiff has failed to allege plausibly that the individual defendants violated his First Amendment rights. The court thus grants defendants' Motion to Dismiss plaintiff's § 1983 claim based on First Amendment retaliation.

## 2. Whether Plaintiff Sufficiently Has Alleged a Fourteenth Amendment Violation

Plaintiff next asserts that defendants Rao, Lemon, Cole, and Demoss deprived him of a property interest and a liberty interest in continued employment without due process of law. Doc. 12 at 20 (Am. Compl. ¶¶ 132, 136). The court construes this claim to assert a procedural due process claim. [5]

The Fourteenth Amendment "protects against governmental deprivations of life, liberty, or property 'without due process of law.'" *Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1135 (10th Cir. 1994) (quoting US. Const. amend. XIV)). To determine whether a defendant has

---

[5]     Plaintiff's Count IV does not specify the type of Fourteenth Amendment violation he is asserting. *See* Doc. 12 at 19–22 (Am. Compl. ¶¶ 127–45); *see also id.* at 19 (Am. Compl. ¶ 131) ("[T]he adverse activity constituted a deprivation of Plaintiff's Fourteenth Amendment rights[.]"). "It is not the role of either the court or the defendant to sort through a lengthy, conclusory, and poorly drafted complaint in order to construct a cause of action." *Abdelsamed v. United States*, 13 F. App'x 883, 884 (10th Cir. 2001).

        The Amended Complaint mentions equal protection only once and even then, it does so in passing. *See id.* at 20 (Am. Compl. ¶ 137) ("Furthermore, classes subject to state protection pursuant to anti-discrimination statutes, enjoy equal protection under the law of the Fourteenth Amendment."). Plaintiff never specifies a violation of his equal protection rights. *See generally id.* The Amended Complaint mentions "policies, directives, decisions, procedures, and practices" that implicate plaintiff's *due process* rights. *Id.* at 21 (Am. Compl. ¶ 142). And, the Amended Complaint alleges defendants deprived plaintiff of his constitutional rights without due process. *Id.* (Am. Compl. ¶ 143). So, the court construes plaintiff's Count IV as a procedural due process claim.

deprived a plaintiff of procedural due process rights, courts engage in a two-step inquiry: (1) "whether the plaintiff had a constitutionally protected interest[,]" and (2) "whether the process afforded was adequate to protect that interest." *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 748 (10th Cir. 2013) (citation omitted).

Defendants ask the court to dismiss this claim because plaintiff did not possess a protected interest, but plaintiff argues he has both a property and a liberty interest in continued employment. "The Constitution does not create or define the contours of 'liberty' or 'property,' the 'broad and majestic terms' enshrined in the Fourteenth Amendment." *Farthing*, 39 F.3d at 1135 (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972)). In the procedural due process context, state law determines whether a plaintiff has a constitutionally protected property or liberty interest. *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 577 (10th Cir. 1996).

Plaintiff's Amended Complaint and his Response to defendants' Motion to Dismiss identify conflicting protected interests. More specifically, plaintiff's Amended Complaint alleges he "enjoyed a continued property interest in the expectation of continued employment in that he would not be terminated for an illegal reason." Doc. 12 at 20 (Am. Compl. ¶ 132). And, the Amended Complaint also alleges that the Kansas Act Against Discrimination (KAAD) "vested in Plaintiff a liberty and property interest in continued employment." *Id.* (Am. Compl. ¶ 136). But in his Response, plaintiff disavows his allegation about continued employment—he argues his "liberty interest is *not* his expectation of continued employment, but rather, in not being discriminated against or retaliated against in the workplace." Doc. 37 at 18. Plaintiff's Response claims the only issue for the court to decide is "[w]hether KAAD claims are a

protected liberty interest[.]" *Id.* at 17.  Confusion aside, plaintiff did not possess a protected

interest in continued employment, nor did he possess a protected interest in his KAAD claims.

As explained above, plaintiff has failed to allege that he was anything other than an at-

will employee.  A "public employee terminable at-will does not possess a protected property

interest under Kansas law for purposes of procedural due process analysis." *Farthing*, 39 F.3d at

1136 (applying Kansas law and citing *Stoldt*, 678 P.2d at 160).  Plaintiff correctly asserts that

"the KAAD protects employees from discrimination[.]"  Doc. 37 at 17.  But discrimination

protections don't fundamentally alter the nature of plaintiff's employment; the KAAD doesn't

mean that employers only can fire their employees for cause.  As a result, plaintiff hasn't alleged

a protected property interest in continued employment.

Nor has plaintiff sufficiently alleged a protected liberty interest in his KAAD claims.

Plaintiff's theory on his liberty interest is, at best, fuzzy.  Plaintiff correctly points out that sexual

harassment can violate a plaintiff's Fourteenth Amendment right to equal protection.  Doc. 37 at

17–18 (citing *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir. 1989)).  But plaintiff's Amended

Complaint doesn't allege sexual harassment or an equal protection violation.  In addition,

plaintiff's theory impermissibly conflates the KAAD and the Constitution.  "An individual's

right to have the relevant state laws strictly obeyed is not a federal right protected by the Civil

Rights Act of 1871 or the Constitution of the United States." *Taylor v. Nichols*, 409 F. Supp.

927, 933 (D. Kan. 1976), *aff'd* 558 F.2d 561 (10th Cir. 1977).  In sum, plaintiff hasn't alleged a

constitutionally protected interest, so his § 1983 claim based on a violation of the Fourteenth

Amendment fails.  The court thus dismisses plaintiff's § 1983 claim (Count IV).

IV.     **Conclusion**

As explained above, the court grants in part and denies in part defendants' Motion to Dismiss (Doc. 28). The court dismisses plaintiff's ADAAA claims or discrimination (Count I) and retaliation (Count II) against defendants KDADS and OSH because the state is entitled to Eleventh Amendment immunity, so the court is without jurisdiction over the claim. Dismissal of this claim is without prejudice.[6] The court also dismisses plaintiff's breach of contract claim against OSH and KDADS (Count III) because it fails to state a claim. Last, the court dismisses plaintiff's § 1983 claim against defendants Rao, Lemon, Cole and Demoss (Count IV) and dismisses these defendants from this action. The court dismisses these claims with prejudice.[7] Plaintiff's Title VII retaliation claim (Count II) against KDADS and OSH survives.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Dismiss (Doc. 28) is granted in part and denied in part.

**IT IS SO ORDERED.**

**Dated this 1st day of March, 2022, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

---

[6]     The court dismisses plaintiff's ADAAA claims without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) ("[D]ismissals for lack of jurisdiction should be without prejudice because the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims." (citing *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004)).

[7]     Generally, "a dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile[.]" *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014). Here, the court finds that amendment would prove futile. Plaintiff doesn't identify any alleged facts that could shore up his claim, nor does he even ask for leave to amend his Complaint. And the court need not grant leave to amend where plaintiff "fail[s] to identify the specific factual allegations [he] would allege in an amended complaint." *Carroll v. Lawton Indep. Sch. Dist. No. 8*, 805 F.3d 1222, 1231 (10th Cir. 2015). So, the court dismisses plaintiff's breach of contract and § 1983 claims with prejudice.