## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CHRIS HARRISON,

        Plaintiff,

v.

OSAWATOMIE STATE HOSPITAL
and KANSAS DEPARTMENT OF
AGING AND DISABILITY SERVICES,

        Defendants.

Case No. 20-2565-DDC

## MEMORANDUM AND ORDER

Plaintiff Chris Harrison filed this action against several parties in November 2020.  Doc.

1.  After the court's Order dismissing multiple defendants and claims (Doc. 45), two defendants

remain:  Osawatomie State Hospital and the Kansas Department of Aging and Disability

Services.  Generally, this Order refers to those two parties collectively, calling them

"defendants."  But when necessary, the court differentiates between them by this terminology:

"OSH" for the state hospital and "KDADS" for the Kansas Department of Aging and Disability

Services.

Plaintiff asserts one remaining claim, accusing defendants of firing him as retaliation for

reporting alleged sexual harassment he witnessed between his coworkers.  This termination,

plaintiff asserts, violated Title VII, 42 U.S.C. §§ 2000e–2000e-17.  After the court granted a

Motion to Withdraw from plaintiff's third attorney of record (Docs. 92, 100), plaintiff now

proceeds pro se.[1]  Defendants have filed a Motion for Summary Judgment (Doc. 88) against

---

[1]       Because plaintiff brings this lawsuit pro se, the court construes his filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 n.3 (10th Cir. 1991) (liberally construing pleadings "to all proceedings involving a pro se litigant").  Under this standard, if the court reasonably can read the arguments of a pro se party to present a valid

plaintiff's claim.  Plaintiff responded (Doc. 110) and defendants replied (Doc. 111).  Also, plaintiff has filed a Motion to Strike (Doc. 106) parts of his deposition testimony, as referenced in defendants' memorandum.  Defendants responded (Doc. 109) to that motion.  Plaintiff later filed a second Motion to Strike (Doc. 113) defendants' Exhibit G attached to their Reply, and defendants responded to that motion (Doc. 114).  So, the parties have fully briefed all the issues.  For reasons explained below, the court denies plaintiff's Motions to Strike (Docs. 106, 113) and grants defendants' Motion for Summary Judgment (Doc. 88).

## I.      Plaintiff's Failure to Controvert Defendants' Statements of Fact

Before reciting the uncontroverted facts governing this summary judgment motion, the court explains why plaintiff has failed to controvert defendants' asserted statements of fact in the fashion required by our court's local rules.

Defendants have filed a Motion for Summary Judgment containing 56 separately numbered statements of fact.  Doc. 89 at 2–9.  Each one cites the specific portion of the summary judgment record defendants rely on to support the asserted fact.  *Id.*  By doing so, defendants have complied with our local rules, which require a party moving for summary judgment to provide a "concise statement of material facts [for] which the movant contends no genuine issue exists" and they are "numbered and . . . refer with particularity to those portions of the record upon which movant relies."  D. Kan. Rule 56.1(a).  Also, D. Kan. Rule 56.1(a) provides:  "All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."

---

legal argument on which he could prevail, "it should do so despite the [pro se party's] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with" legal proceedings.  *Id.* at 1110.  But the court can't assume the role of advocate for the pro se party.  *Id.*  Neither is plaintiff relieved from complying with the court's rules nor facing the consequences of noncompliance.  *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994).

Plaintiff's Opposition to Motion for Summary Judgment never explicitly controverts any of defendants' facts. Instead, plaintiff responds to all of defendants' fact statements by citing Fed. R. Civ. P. 11. Doc. 110 at 8–22. Also, plaintiff occasionally argues that the "'Amended Complaint' is not listed in the exhibits, nor is it verified as admissible evidence[,]" *see, e.g.*, *id.* at 8, and that his deposition isn't signed, *see, e.g.*, *id.* at 8–10, 14–15. None of these responses comply with our local rules. Those rules require a party opposing summary judgment to controvert the movant's facts specifically. *See* D. Kan. Rule 56.1(a) ("All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party"); *see also* D. Kan. Rule 56.1(b)(1) ("A brief in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts [for] which the party contends a genuine issue exists. Each fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed.").

Because plaintiff hasn't challenged movants' summary judgment facts in the fashion required by our rules, the court accepts as true defendants' material facts—but only where the summary judgment record properly supports those facts. *See Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (explaining that when party opposing summary judgment waives its right to respond or controvert the facts asserted in moving party's summary judgment motion, court "should accept as true all material facts asserted and properly supported in the summary judgment motion"). And here, the summary judgment record supports most of defendants' fact statements, referencing supporting evidence in the record. These record sources include plaintiff's deposition and his employer's investigation report. Because plaintiff never

controverts any of those facts, the court accepts them as true for purposes of the summary judgment motion.

## II.     Uncontroverted Facts

The following facts come from stipulations reported by the Third Amended Pretrial Order (Doc. 105) or are uncontroverted for summary judgment purposes.[2]

Plaintiff worked as a Safety and Security Officer (SSO) at defendant OSH from December 31, 2018 to July 16, 2019.[3]  Doc. 105 at 2 (Third Am. Pretrial Order ¶¶ 2.a.i.–ii.).  At some point before March 8, 2019, plaintiff witnessed another SSO, Officer Archer, stare at the breasts of a third SSO, Officer Gallagher, during an encounter at work.  Doc. 89-1 at 2–3 (Pl. Dep. 64:20–65:21).  Plaintiff and Officer Gallagher reported the incident to their supervisor, Lieutenant Blake Thomas, the same day it occurred.  *Id.* at 3 (Pl. Dep. 66:24–68:23); Doc. 105 at

---

[2]     Plaintiff tries to controvert facts about the place and dates of his employment directly.  Doc. 110 at 8–9.  But they come from the stipulated facts in the Third Amended Pretrial Order, to which all parties agreed.  *See* Doc. 105 at 2 (stipulating to facts as true); *see also Associated Press v. Cook*, 513 F.2d 1300, 1303 (10th Cir. 1975) (recognizing that "parties are bound by their admissions and stipulations included in a pre-trial order").

[3]     In response to defendants' statement about the dates of plaintiff's employment, plaintiff quotes Fed. R. Evid. 402, arguing that "'[i]rrelevant evidence is not admissible.'"  Doc. 110 at 9.  While plaintiff correctly quotes Rule 402 and grasps the rule's defining principle, his argument misapplies the rule.  In a case alleging retaliation by plaintiff's employer, the dates of plaintiff's employment are relevant to establish that he worked for defendants during the time when the alleged incidents occurred.  *See* Fed. R. Evid. 401 ("Evidence is relevant if . . . the fact is of consequence in determining the action.").

Plaintiff also responds to these statements about his dates of employment, position title, and employer by citing Fed. R. Civ. P. 11.  Doc. 110 at 8–9.  Plaintiff never explains how Rule 11 applies, asserting only that the "[d]eposition [is] not signed/verified."  *Id.*  But the factual statements which plaintiff challenges here don't rely on plaintiff's deposition.  Instead, they again cite stipulated facts in the Pretrial Order.  Doc. 105 at 2 (Third Am. Pretrial Order ¶¶ 2.a.i.–ii.).  The pretrial order "controls the course of the action" after the pretrial conference, Fed. R. Civ. P. 16(d).  *See also Weyerhaeuser Co. v. Brantley*, 510 F.3d 1256, 1267 (10th Cir. 2007) ("The subsequent pretrial order [supersedes] the pleadings.").

And plaintiff cites Rule 11 in his response to every one of defendants' statements of fact.  Presumably, plaintiff's citations to this rule reference his first Motion to Strike (Doc. 106).  The court addresses plaintiff's Motion to Strike in another part of this Order, explaining why that motion fails.  *See infra* Part IV.B. (discussing and denying plaintiff's Motions to Strike).

3 (Third Am. Pretrial Order ¶ 2.a.viii.).  Plaintiff then reported the incident to Michael Wood, OSH's Chief of Safety and Security, and William Woodward, Officer Archer's supervisor.  Doc. 89-1 at 4 (Pl. Dep. 69:6–70:23); Doc. 105 at 3 (Third Am. Pretrial Order ¶ 2.a.vii.).  Mr. Woodward said he would address the incident with Officer Archer.  Doc. 89-1 at 5 (Pl. Dep. 73:18–23).  Plaintiff doesn't know if his supervisors documented the incident or reported it to human resources.  *Id.* (Pl. Dep. 74:2–75:21).

On March 8, 2019, Chief Wood and State Psychiatric Hospitals HR Director Venkata Rao—two administrators working at OSH—called plaintiff into a meeting.  *Id.* at 6 (Pl. Dep. 85:12–86:6); Doc. 105 at 2 (Third Am. Pretrial Order ¶ 2.a.iii.).  At the meeting, the administrators discussed plaintiff's report about Officer Archer's alleged sexual harassment of Officer Gallagher.  Doc. 89-1 at 9–10 (Pl. Dep. 100:19–102:3).  No one at the meeting expressed displeasure about plaintiff making his report about alleged sexual harassment.  *Id.* at 10 (Pl. Dep. 102:20–103:10).  Instead, Mr. Rao wanted to know why he hadn't heard about the alleged harassment sooner.  *Id.*

At the same meeting, the administrators also thanked plaintiff for not involving himself in an earlier incident involving Officer Gallagher.  *Id.* at 9 (Pl. Dep. 99:2–8).  Then, Chief Wood and Mr. Rao informed plaintiff about an alleged video that showed him driving too slowly to an emergency situation.  *Id.* (Pl. Dep. 99:9–21).  Plaintiff claims Mr. Rao told him that Officer Gallagher had recorded this video.  *Id.* at 7 (Pl. Dep. 91:15–92:10).  Plaintiff denies engaging in the conduct Mr. Rao described—as captured in the alleged video.  *Id.* (Pl. Dep. 92:11–13).  Nobody ever disciplined plaintiff for this alleged conduct.  *Id.* at 7–8 (Pl. Dep. 92:17–93:16, 96:9–15).

On May 18, 2019, plaintiff didn't report for his scheduled shift at work.  Doc. 89-5.

Plaintiff claims he had requested the day off as a disability accommodation.  Doc. 89-1 at 14 (Pl.

Dep. 144:1–6).  Plaintiff later received a "verbal counseling" for failing to show up for his shift,

as described in an accompanying Consultation Report.  Doc. 105 at 3 (Third Am. Pretrial Order

¶ 2.a.xiv.); Doc. 89-5.  After this Consultation Report write-up and verbal counseling, plaintiff

complained to OSH's human resources that defendant wrongfully had disciplined him and

discriminated against him based on disability.  Doc. 89-3 at 1.  Leslie Gish, OSH's Employee

Relations Manager, investigated his complaint.  Doc. 105 at 3 (Third Am. Pretrial Order

¶ 2.a.xiii.); *see also* Doc. 89-3.  Ms. Gish interviewed several of plaintiff's coworkers and

supervisors.  *See generally* Doc. 89-3.  She concluded her investigation on July 5, 2019.  *Id.* at 6;

*see also* Doc. 105 at 3 (Third Am. Pretrial Order ¶ 2.a.xiii.).  Ms. Gish found that plaintiff's

discrimination claims lacked foundation, but that plaintiff had "created a hostile work

environment for his supervisors and peers . . . thus violating KDADS policy 3.8 concerning

Employee Conduct."  Doc. 89-3 at 6.  Eleven days later, on July 16, 2019, defendants terminated

plaintiff's employment.  Doc. 89-6.

### III.    Summary Judgment Standard

Summary judgment is appropriate when the moving party demonstrates there is "no

genuine dispute" about "any material fact" and that the movant is "entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  This standard requires the court to "view the evidence and

make inferences in the light most favorable to the non-movant."  *Nahno-Lopez v. Houser*, 625

F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins.*, 619 F.3d 1243, 1245–46

(10th Cir. 2010)).

"An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a

verdict for the non-moving party' on the issue."  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986)). "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). To carry this burden, the moving party "'need not negate the non-movant's claim, but [it] need only point to an absence of evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)). Even if the non-moving party fails to respond adequately, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Reed*, 312 F.3d at 1194–95.

If the moving party satisfies its initial burden, the non-moving party "'may not rest on [his] pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Kannady*, 590 F.3d at 1169 (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. The specific facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Adler*, 144 F.3d at 671). Affidavits and testimony "must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not

sufficient." *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1030–31 (10th Cir. 2022) (quotation cleaned up).

Finally, federal courts don't view summary judgment as a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Instead, it represents an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

## IV.    Analysis

### A.  Overview

After defendants filed for summary judgment, plaintiff twice moved to strike the parts of his deposition cited by defendants' supporting papers. *See* Docs. 106, 113. Plaintiff's request to strike contends that defendants improperly used plaintiff's interrogatory answers during his deposition. He also asserts that he didn't provide the interrogatory responses. Defendants disagree.

The record rejects plaintiff's characterization of these events, so the court denies both of plaintiff's Motions to Strike. Part B, below, explains the rationale for the court's conclusion about this threshold issue. Part C, following, takes up defendants' Motion for Summary Judgment (Doc. 88).

### B.  Plaintiff's Motions to Strike (Docs. 106, 113)

Plaintiff's first Motion to Strike (Doc. 106) asks the court "to strike any and all deposition testimony that was not provided by Interrogatory Responses or Plaintiff Discovery Responses that was not provided by attorney Jonathon Nichol[.]" Doc. 106 at 1. Mr. Nichol was the last of three attorneys who have represented plaintiff in this action. Mr. Nichol entered his appearance on August 12, 2022, Doc. 71, and the court permitted him to withdraw as counsel on

November 23, 2022, Doc. 100 (granting Mr. Nichol's Motion to Withdraw, Doc. 92, filed on November 9, 2022).

The Federal Rules of Civil Procedure provide that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Our court has maintained that a motion to strike isn't proper when it targets filings that aren't pleadings. *See Fox v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1251 (D. Kan. 2017) (citing Fed. R. Civ. P. 7(a) (listing documents considered pleadings)); *see also Williams v. Alpine Banks of Colo.*, No. Civ. A. 05CV02475WDMME, 2006 WL 905333, at *2 (D. Colo. Apr. 7, 2006) (denying motion to strike because "[m]otions, briefs in support of motions, responses to motions, replies to responses to motions, and other papers are not pleadings under the Federal Rules and cannot be stricken by the Court under Rule 12(f)" (citation omitted)).

Plaintiff's deposition isn't a pleading. *See Fox*, 258 F. Supp. 3d at 1251 (citing Fed. R. Civ. P. 7(a) as source of authority for filings that qualify as "pleadings"). Neither are his interrogatory responses. *See id.* Instead, depositions and interrogatory responses are documents used in the discovery process, governed by Rules 26–37. Thus, Rule 12(f) doesn't apply to plaintiff's deposition, and the court declines to strike any part of the deposition under that rule.

But even if the court chose to treat plaintiff's Motion to Strike portions of his deposition testimony as, instead, an objection made under the Federal Rules of Evidence, the motion still would fail. Fed. R. Evid. 103(a)(1)(B) requires plaintiff to "state[ ] the specific ground" for his objection "unless it was apparent from the context[.]" Plaintiff's motion never states the legal grounds for his objection to his own deposition testimony, nor does it identify which portions of plaintiff's testimony he aspires to strike. And the theory of his objection is far from obvious.

Plaintiff does disclose that he seeks to strike sections of his deposition as invalid because defendants "introduced prior interrogatory responses [during the deposition] that were not made by [p]laintiff or filed with the courts." Doc. 106 at 1. Defendants respond that they didn't "introduce" plaintiff's interrogatory responses as an exhibit during the deposition, but, instead, they "referenced plaintiff's [interrogatory] responses and asked if certain responses were accurate[,]" thus giving plaintiff the "opportunity to correct them at the deposition." Doc. 109 at 1–2 (Defs.' Resp. ¶ 4). The Federal Rules of Civil Procedure allow that an "answer to an interrogatory may be used to the extent allowed by the Federal Rules of Evidence." Fed. R. Civ. P. 33(c). Defendants' use of plaintiff's interrogatory answers—which are statements by plaintiff, under oath according to Fed. R. Civ. P. 33(b)(3)—didn't violate any pertinent rules of evidence or procedure. Thus, none of plaintiff's deposition statements about these interrogatory answers warrant an order striking them from the summary judgment record.

Plaintiff also objects that defendants didn't "provide a copy of any questions asked during the deposition to counsel or to the clerk's office prior to the deposition[.]" Doc. 106 at 1. But plaintiff never cites any rule requiring defendants to provide their deposition questions in advance of the deposition. That's because there's no such rule or requirement. Perhaps plaintiff's argument misapprehends Fed. R. Civ. P. 31(a)(5), which requires service of questions on all other parties prior to a deposition conducted on *written* questions. *Id.* But Rule 31 doesn't apply to plaintiff's deposition here, one conducted by oral examination under Rule 30. *See* Doc. 72 at 1 (noticing plaintiff's deposition under Fed. R. Civ. P. 30). And Rule 30 doesn't require advance service of questions. *See* Fed. R. Civ. P. 30. Plaintiff's position isn't supported by the rules.

Finally, plaintiff never identifies the portions of his deposition he wants the court to strike. Plaintiff's objection to his "entire testimony . . . does not suffice where the objection is tenable to only a part of the testimony." 21 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 5036.3 (2d ed. 2020). When a party challenges testimony, it must "target only those portions of the testimony subject to the objection made." *Id.*; *see also United States v. Martinez*, 76 F.3d 1145, 1150 (10th Cir. 1996) (holding that "objections must 'substantially satisf[y] the requirement of putting the court on notice' of the grounds for objection" (first quoting *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 174 (1988); then citing Fed. R. Evid. 103(a)(1))). Plaintiff doesn't identify the material he believes the court should exclude, and any portions of his deposition that might merit objection aren't apparent from context. Because the court can't determine the material plaintiff seeks to exclude, it thus denies the entirety of his motion.

Plaintiff's second Motion to Strike (Doc. 113) similarly lacks legal justification. In it, plaintiff asks the court to strike defendants' Exhibit G (Doc. 111-1)—filed with their Reply in Support of Summary Judgment (Doc. 111)—"for violation of [Fed. R. Evid.] 403, untimely filing, and for the significant prejudicial effect of confusing misrepresentations of material facts." Doc. 113 at 3.

Fed. R. Evid. 403 permits the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." None of these conditions apply here. As the court explains in detail below, defendants offered Exhibit G to counter plaintiff's assertion that his deposition wasn't signed or verified. *See infra* Section IV.B.1.b. at 17 n.3; *see also* Doc. 111 at 3. Establishing the

signed certificate for a deposition doesn't prejudice plaintiff unfairly.  Instead, it properly refutes plaintiff's curious assertion that he never signed his deposition.  Defendants' decision to include Exhibit G helps clarify—not confuse—the issues and avoids misleading the court since the exhibit only provides the portions of the deposition necessary to contradict plaintiff's assertion. Defendants also didn't delay or waste time by including Exhibit G, as it accompanied their timely filed Reply.  *See* D. Kan. Rule 6.1(d)(2) ("Replies must be filed within 14 days after the response is served."); Docket Entry for Doc. 110 (noting plaintiff's Opposition to Motion for Summary Judgment filed on Jan. 23, 2023); Docket Entry for Doc. 111 (noting defendants' Reply to Response to Motion filed on Feb. 6, 2023—14 days after plaintiff's response).

Plaintiff also claims that he was "deprived of the right to a hearing on the evidence to be included in any of the pretrial orders where Exhibit G never existed in any pretrial order or in Defendant's Motion for Summary Judgment."  Doc. 113 at 2–3.  But Exhibit G merely provides excerpts of plaintiff's deposition transcript.  The parties stipulated to the admissibility of this deposition's transcript and all its exhibits in the Pretrial Order.  *See* Doc. 105 at 4 (Third Am. Pretrial Order ¶ 2.b.xviii.).  Thus, plaintiff can't object to its admissibility.  *See Associated Press v. Cook*, 513 F.2d 1300, 1303 (10th Cir. 1975) (recognizing that "parties are bound by their admissions and stipulations included in a pre-trial order").

In sum, plaintiff's first Motion to Strike (Doc. 106) doesn't apply to his deposition testimony since it's not a pleading.  And even if the court chose to treat that motion as an objection to the evidence provided in the deposition testimony, plaintiff still doesn't identify the specific portions of his deposition he seeks to strike or provide any legal justification for his motion.  Plaintiff's second Motion to Strike (Doc. 113) provides no legal grounds for objecting

to Exhibit G, which includes excerpts from a document he already stipulated to in the Pretrial Order. Thus, the court denies both of plaintiff's Motions to Strike (Docs. 106, 113).

### C. Defendants' Motion for Summary Judgment (Doc. 88)

Defendants' summary judgment motion relies on two independent grounds. First defendants contend that plaintiff cannot satisfy his burden to establish a prima facie case of retaliation. Second, they contend plaintiff has failed to adduce any evidence capable of supporting a finding that defendants' legitimate, nonretaliatory reason for firing him was pretextual. So, defendants argue, there's no triable issue of pretext. The court addresses both issues in separate subsections, below.

#### 1. *Plaintiff's failure to establish a prima facie case*

Title VII prohibits an employer from discriminating against an employee "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Claims asserting a violation of this provision commonly are called retaliation claims. And claims alleging that the employer retaliated by terminating the employment relationship often are called retaliatory discharge claims.

To establish a retaliatory discharge claim under Title VII, "a plaintiff must establish that the decision to terminate [him] resulted from retaliatory animus." *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 549 (10th Cir. 1999). A plaintiff can satisfy this requirement in one of two ways: by direct evidence or circumstantial evidence. *Id.* If a plaintiff adduces direct evidence of retaliation, he has carried his summary judgment burden to establish that the termination resulted from retaliatory animus. *Id.* at 550. But more often than not, as here, retaliation plaintiffs rely on the circumstantial evidence prong. Under it, plaintiff's case relies "on the

familiar framework" of *McDonnell Douglas*'s burden-shifting test.  *Id.* at 549 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)).

The *McDonnell Douglas* framework unfolds in three parts.  *First*, it requires a plaintiff to establish a prima facie case of retaliation by showing that:  (1) he engaged in protected activity, (2) "a reasonable employee would have found the challenged action materially adverse," and (3) a causal connection existed between his protected activity and the materially adverse action. *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021) (citing *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012)).  The Supreme Court has clarified the third part of this formulation—the causation requirement—explaining that "a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013).  *Second*, if plaintiff satisfies this prima facie requirement, the burden shifts to defendants, who must articulate a legitimate, non-retaliatory reason for the adverse employment action.  *Ford v. Jackson Nat'l Life Ins.*, 45 F.4th 1202, 1215 (10th Cir. 2022) (citations omitted). *Third*, if defendants supply such a legitimate reason, the burden shifts back to plaintiff to show that defendants' proffered reasons for its actions are "'pretextual—*i.e.*, unworthy of belief.'"  *Id.* (citing *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019)).

Here, defendants' motion asserts that plaintiff has failed his burden at the prima facie stage, arguing that he "fails to prove that his report of sexual harassment was the but-for cause of his termination."  Doc. 89 at 11.  For summary judgment purposes, defendants concede that plaintiff satisfies the first two prongs of the prima facie case.  Specifically, this concession stipulates—for now—that plaintiff reported (to his supervisor) witnessing an alleged event of sexual harassment between coworkers.  Doc 89-1 at 3, 4 (Pl. Dep. 66:24–68:23, 69:6–70:23).

14

The act of making this report is protected activity under Title VII. *See* 42 U.S.C. § 2000e-3(a). Defendants also concede—again, for now—that they terminated plaintiff's employment, which qualifies as a materially adverse action because such an action is likely to "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (quotation cleaned up). Defendants' motion focuses on the third prong of the prima facie case. Defendants argue that plaintiff "offers no response, supported by admissible evidence, to [counter] defendants' position that . . . he failed to prove causation between his alleged protected activity and subsequent termination." Doc. 111 at 4.

Plaintiff never responds to defendants' argument with any argument of substance. Nor does he cite any evidence in the summary judgment record tending to support his claim of causation.[4] Instead, plaintiff's Response to defendants' motion merely cites case law describing the summary judgment standard. He notes that a "dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party *on the evidence presented*" and that "a moving party need not disprove the nonmoving party's claims; rather, the movant need only point out a *lack of evidence* on an essential element of the other party's claim to establish it is

---

[4]    Plaintiff attaches 11 exhibits to his Response in support of his argument, but the court doesn't find any of them relevant. Some of them—Docs. 110-1, 110-3, 110-6, 110-7, 110-9, and 110-10—are utterly unnecessary since the CM/ECF docket already includes them. *See* Docs. 12, 74, 75, 86, 88, 89. And none of plaintiff's exhibits bear any connection to the causation element of plaintiff's prima facie case, or even to the broader summary judgment issues. Instead, plaintiff's exhibits try—yet again—to support his first Motion to Strike, which the court now has denied. And in the few, brief passages where plaintiff discusses summary judgment issues, he merely quotes from purported correspondence between himself, Mr. Rao, and Wes Cole—OSH's interim superintendent. *See* Doc. 110 at 5–8. But plaintiff never cites the part of the summary judgment record containing this correspondence or the purported quotes, and the court can't locate them in that record. In sum, plaintiff hasn't met his burden to identify evidence of "specific facts showing a genuine issue for trial" about his causation burden, as applied at summary judgment. *Kannady*, 590 F.3d at 1169 (citation omitted).

[entitled] to summary judgment." Doc. 110 at 22–23 (citing *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008)) (emphasis in Pl.'s Resp.).

Plaintiff accurately has perceived the gist of defendants' summary judgment theory. Defendants have done what *Adamson* permits: they have "point[ed] out a *lack of evidence* on [this] essential element" of plaintiff's claim. *Id.* And once defendants made this assertion, plaintiff no longer could rest on his pleadings, but, instead, he "must bring forward specific facts showing a genuine issue for trial" on this causation requirement, one where plaintiff "carries the burden of proof." *Kannady*, 590 F.3d at 1169 (quotations cleaned up). This is the burden plaintiff here has failed to shoulder because he hasn't identified any "specific facts" showing a genuine trial issue about a causal connection—or here, the absence of such a connection— between his protected activity and the decision to terminate his employment. *Reznik*, 18 F.4th at 1260.

Despite plaintiff's failure to meet, much less discharge his summary judgment burden, the court nevertheless examines defendants' "submission to determine if [they have] met [their] initial burden of demonstrating" that there aren't any material issues of fact remaining for trial and whether, in fact, defendants deserve "judgment as a matter of law." *Reed*, 312 F.3d at 1194– 95. This examination considers the avenues available to plaintiff and, for reasons explained below, concludes that no material issue of fact precludes summary judgment.

a.   Lack of temporal proximity

The substantive case authority permits retaliation plaintiffs to satisfy the causation requirement with "evidence such as protected conduct closely followed by adverse action." *Coleman v. Blue Cross Blue Shield*, 487 F. Supp. 2d 1225, 1255 (D. Kan. 2007) (citing *Conner v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997)). But plaintiffs who rely on this theory of causation must demonstrate "very close temporal proximity between the protected

16

activity and the retaliatory conduct," or else they "must offer additional evidence to establish causation." *Id.* (citing *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)).

Here, the summary judgment record establishes that plaintiff reported his colleague's sexual harassment to a supervisor sometime before March 8, 2019—the date Mr. Rao and Chief Wood discussed the incident with plaintiff at a meeting. Doc. 89-1 at 9–10 (Pl. Dep. 100:19–102:3). Defendants fired him on July 16, 2019—more than four months after that March 8 meeting, which is the latest date when plaintiff could have reported the alleged harassment.

Our Circuit has held that a "three-month period between the activity and termination, standing alone, does not establish a causal connection." *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (determining that plaintiff lacked a causal connection); *see also Coleman*, 487 F. Supp. 2d at 1255–56 (holding that a four month period between protected activity and adverse action means "plaintiff's protected activity was not closely followed by adverse action," and "plaintiff may not rely on temporal proximity alone to establish causation"). Here, the time span between the March 8 date—the latest date when plaintiff could have reported the alleged harassment—and plaintiff's termination exceeds four months. And plaintiff has testified that he reported the alleged harassment to multiple supervisors on the day it happened, further elongating that temporal proximity beyond the "three month period" recognized by our Circuit's cases. So, temporal proximity alone can't establish a basis for finding or inferring a causal connection between plaintiff's protected activity and his termination.

         **b.   Other incidents of alleged retaliation**

Plaintiff's lone remaining claim in the Pretrial Order alleges only that defendants' "termination of Plaintiff was illegitimate and discriminatory." Doc. 105 at 11 (Third Am. Pretrial Order ¶ 4.a.1.). But it asserts no other potentially adverse employment actions as a basis for his lone claim. Plaintiff nonetheless asserts in the portion of the Pretrial Order identifying

plaintiff's factual contentions that he "suffered a string of retaliatory actions" through defendants' conduct, including: (1) accusing him of driving too slow to an emergency; (2) failing him in a fire preparedness training; (3) giving him "verbal counseling" for failing to show up for a shift; and (4) denying him personal time off to attend active shooter training. Doc. 105 at 5–7. Plaintiff implies in his Response to defendants' Motion for Summary Judgment that these incidents combine to form the basis of a claim for retaliatory harassment. *See* Doc. 110 at 5 (citing "numerous reports . . . regarding issues of being harassed about disability related allegations" and arguing that "harassment occurred, it was reported, and that harassment continued regardless of context if the intent was to cause harm to the [p]laintiff").

But plaintiff has no route to pursue a retaliatory harassment claim. Generally, our court has analyzed claims for retaliation and retaliatory harassment as separate and distinct claims. In *Turrentine v. United Parcel Serv., Inc.*, 645 F. Supp. 2d 976 (D. Kan. 2009), the court distinguished between a retaliation claim that alleges "retaliatory acts only individually and treats each allegedly retaliatory act as a separate and distinct claim of retaliation" and "a claim of retaliatory harassment based on the aggregate effect of the actions taken against" plaintiff. *Turrentine*, 645 F. Supp. 2d at 985. The court has applied this distinction in a number of cases since *Turrentine*, determining that plaintiffs must allege retaliation and retaliatory harassment as separate claims. S*ee, e.g.*, *Bermudez v. City of Topeka*, No. 5:18-CV-4141-HLT-ADM, 2020 WL 206766, at *4 n.4 (D. Kan. Jan. 14, 2020); *Adcox v. Brennan*, No. 15-cv-9258-JWL, 2017 WL 2405326, at *6 (D. Kan. June 2, 2017); *Haney v. Preston*, No. 08-2658 JAR-GLR, 2010 WL 5392670, at *12 (D. Kan. Dec. 22, 2010).

All "claims, issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint[.]" *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th

Cir. 2002). This is so because pretrial orders supersede all pleadings covered by Rule 8. *Weyerhaeuser Co. v. Brantley*, 510 F.3d 1256, 1267 (10th Cir. 2007); *see also Muckala*, 303 F.3d at 1215 (10th Cir. 2002) ("[T]he pretrial order is the controlling document for trial." (quotation cleaned up)). Parties bear the burden to ensure that the pretrial order accurately recites their position on facts, legal theories, and other matters recited there. *Turner v. Unified Gov't of Wyandotte Cnty./Kansas City, Kan.*, No. CV 18-2202-KHV, 2020 WL 1888837, at *2 (D. Kan. Apr. 16, 2020) (citing *Hung Duc Bui v. IBP, Inc.*, 201 F.R.D. 509, 512 (D. Kan. 2001)). They likewise are responsible for claims omitted from the pretrial order. *Id.* (citations omitted).

According to the distinction recognized in *Turrentine*, because plaintiff's only remaining claim discretely alleges that defendants retaliated by firing him, plaintiff has failed to preserve a separate claim for retaliatory harassment. Thus, the court needn't decide whether the other employment events—whether viewed individually or together—can support a retaliatory harassment claim because plaintiff hasn't preserved such a claim.

But even if plaintiff properly could assert the retaliatory harassment claim, he has adduced no evidence that demonstrates the requisite "retaliatory animus" to motivate his termination. *Medlock*, 164 F.3d at 549 ("To prevail on a retaliatory discharge claim, a plaintiff must establish that the decision to terminate [him] resulted from retaliatory animus."). Defendants assert that plaintiff "fails to draw the necessary nexus between these events and his report of sexual harassment or flatly admits they are unrelated to his report of sexual harassment." Doc. 89 at 12. Defendants are correct. As a matter of law, the events aren't: (1) sufficiently adverse to qualify as materially adverse employment actions; and, even if they were, (2) plaintiff doesn't connect them to his protected conduct.

*First*, several of the alleged incidents simply can't qualify as adverse employment actions, a standard requiring a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Semsroth v. City of Wichita*, 304 F. App'x 707, 718 (10th Cir. 2008) (quotation cleaned up). To that end, "mere inconvenience or an alteration of job responsibilities will not constitute an adverse employment action." *Id.* (quotation cleaned up). Here, the incidents plaintiff asserts as retaliatory don't rise to the required level because none "relate to the terms and conditions of employment." *Conner*, 121 F.3d at 1395 n.4 (declining to extend adverse employment actions to include conduct that doesn't affect the conditions of plaintiff's work). He never alleges any of his supervisors disciplined him for not completing fire trainings or driving too slowly to an emergency. And the verbal counseling plaintiff received for missing a shift, which was accompanied by a written "consultation report," doesn't rise to the level of an adverse employment action either. *Semsroth*, 304 F. App'x at 719 (holding that plaintiff failed "to establish a prima facie claim because she did not demonstrate that the reprimand she received constituted an adverse employment action" and that a "written warning *may* be an adverse employment action only if it effects a significant change in the plaintiff's employment status"). Thus, plaintiff hasn't alleged any sufficiently adverse actions to qualify as retaliatory.

*Second*, plaintiff can't demonstrate "that a causal connection existed between the protected activity and the materially adverse action." *Reznik*, 18 F.4th at 1260 (quotation cleaned up). He cites no facts in the summary judgment record capable of linking these actions and plaintiff's lone act of protected activity—reporting his co-worker's alleged sexual harassment.

Plaintiff's statement of factual contentions in the Third Amended Pretrial Order asserts that he attended what he "understood was going to be a meeting commending him for reporting his coworker's sexual harassment" but, instead, supervisors "claimed they had a video of the incident provided by Harrison's female coworker . . . who [plaintiff's] coworkers had sexually harassed" and accused him of driving too slowly to an emergency.  Doc. 105 at 5 (Third Am. Pretrial Order ¶ 3.a.).  This statement is the closest plaintiff comes to tying any of the alleged retaliatory incidents to his protected activity.  And even then, plaintiff doesn't correlate the two or provide any facts that could provide "sufficient evidence to establish an inference of retaliatory motive and thus a causal connection between" the alleged retaliatory incident and plaintiff's protected activity.  *O'Neal*, 237 F.3d at 1253 (requiring coworker testimony and other specific facts to establish causal connection to retaliation at summary judgment).  Also, defendants asked plaintiff during his deposition if he believed the decision denying him personal time off to attend active shooter training (and share the training with his coworkers) was retaliatory.  Doc. 89-1 at 20 (Pl. Dep. 199:19–200:2).  Plaintiff explicitly conceded that he didn't. *Id.*  And he hasn't adduced any evidence that could support a finding connecting this decision to his report of alleged sexual harassment.

Instead, plaintiff consistently argues that defendants retaliated against him for making disability accommodations requests.  *See* Doc. 105 at 4–8 (Third Am. Pretrial Order ¶ 3.a).  But any claim plaintiff might have for retaliation because of his disability accommodations requests isn't part of this action.  *See* Doc. 45 at 6–9 (Memorandum and Order dismissing plaintiff's disability claims for lack of jurisdiction due to defendants' Eleventh Amendment immunity).  Plaintiff's only "remaining claim is one for Title VII retaliation (Count II) against Defendants for reporting his coworker's sexual harassment."  Doc. 105 at 11 (Third Am. Pretrial Order ¶ 4.a.i.).

21

Plaintiff must carry his burden to support a prima facie case for retaliation based on his report of alleged sexual harassment—not disability—and these incidents fail to help him do so. Plaintiff's assertions connecting the alleged incidents to a claim for disability retaliation can't help him carry his prima facie burden since they don't fit with his lone preserved claim.

In sum, plaintiff hasn't adduced evidence to demonstrate a genuine, triable issue of fact that—if resolved in plaintiff's favor—could permit a reasonable jury to find or infer that any of the alleged incidents can support his retaliation claim. None of the alleged incidents qualify as adverse employment actions. And even if they did, plaintiff never adduces evidence that could support an inference or finding of a causal connection between those discrete incidents and his protected activity—reporting sexual harassment.

Because plaintiff hasn't controverted defendants' statements of fact, and he has produced none of his own, the court finds no genuine dispute of material fact about the lone claim remaining in this case. *See Douglass v. United Auto Workers Loc. Union 31*, 188 F. App'x 656, 659 (10th Cir. 2006) (affirming district court's grant of summary judgment because pro se plaintiff provided no valid legal argument and addressed issues "in the most cursory and conclusory manner"); *see also* Fed. R. Civ. P. 56(e)(3). But the court may grant summary judgment only if defendants have carried their "initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Reed*, 312 F.3d at 1194–95. Defendants here have shouldered that burden.

### 2. Defendants' legitimate reason for termination

Had plaintiff carried his burden at the first stage of the *McDonnell Douglas* framework by establishing a prima facie case of retaliation, the burden would shift to defendants to establish they had a legitimate, non-retaliatory reason for the adverse employment action. *Ford*, 45 F.4th at 1215 (citations omitted). Here, defendants cite Ms. Gish's investigation report that found

plaintiff had "created a hostile work environment for his supervisors and peers . . . thus violating

KDADS policy 3.8 concerning Employee Conduct."  Doc. 89-3 at 6.  Our Circuit has held that

violating employer policies and creating a hostile work environment is a legitimate, non-

retaliatory reason to terminate an employee.  *Zamora v. Bd. of Educ. for Las Cruces Pub. Schs.*,

553 F. App'x 786, 790 (10th Cir. 2014).  Defendants thus have discharged their summary

judgment burden at the second stage of the *McDonnell Douglas* analysis.

### 3.  Plaintiff's failure to allege pretext

Once defendants carry their burden under *McDonnell Douglas*'s second step, the burden

then shifts back to plaintiff to establish that defendants' stated reasons for termination are

"pretextual—*i.e.*, unworthy of belief."  *Ford*, 45 F.4th at 1215 (citation omitted).  And plaintiff

must adduce evidence creating a genuine dispute of material fact capable of supporting a finding

that defendants' stated reasons for discharging him are designed to hide their retaliatory motive.

*See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support

the assertion by . . . (A) citing to particular parts of materials in the record[.]").  Defendants note

that plaintiff hasn't deposed any representative of either defendant.  Nor has he adduced any

other evidence from any source suggesting pretext.  Plaintiff simply makes no arguments trying

to carry his summary judgment burden on pretext.  The court thus concludes that plaintiff has

failed to present a genuine issue of material fact whether defendant's legitimate, nonretaliatory

reason for firing him was pretextual.  *See, e.g.*, *Luke v. Hosp. Shared Servs., Inc.*, 513 F. App'x

763, 766 (10th Cir. 2013) (affirming summary judgment under *McDonnell Douglas* analysis

when plaintiff produced no evidence of pretext); *Hysten v. Burlington N. Santa Fe Ry.*, 415 F.

App'x 897, 905 (10th Cir. 2011) (affirming summary judgment when plaintiff "presents no

evidence that eliminates—or even limits—the possibility" that employer's "explanation was

honestly given").

In sum, plaintiff hasn't adduced any relevant evidence supporting a genuine issue whether plaintiff can satisfy the first or third steps in the *McDonnell Douglas* burden-shifting framework.  The court thus grants defendants' Motion for Summary Judgment (Doc. 88).

## V.    Conclusion

Plaintiff's Motions to Strike lack legal justification.  And plaintiff's Response fails the burden to support a prima facie case of retaliation because he doesn't demonstrate a causal connection between his protected activity and his firing.  Nor does he adduce any evidence creating a genuine dispute of material fact whether defendants' legitimate, nonretaliatory reason for discharging him was pretextual.  Thus, for the reasons explained in this Order, the court denies plaintiff's Motions to Strike and grants defendants' Motion for Summary Judgment.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's Motions to Strike (Docs. 106, 113) are denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendants' Motion for Summary Judgment (Doc. 88) is granted.  Consistent with this Order, the court directs the Clerk to enter Judgment against plaintiff and close this case.

**IT IS SO ORDERED.**

**Dated this 27th day of July, 2023, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

24